My name is Michael Purcell for the petitioner in this case. This case has got a fairly extensive record for an immigration case, but what it boils down to is whether the evidence of this foreign conviction or this purported foreign conviction was sufficient and whether it was properly authenticated. And what I'd like to do real quickly is to walk through the requirements as I see them in the regulations for establishing those things. In this particular circumstance, the regulation is defined, and this is at 8 CFR 1003.41, the specific kinds of proof that you need to establish a record of conviction. And there's four different sections. The first one is subsection A, which specifies six different specific documents or records. I'll come back to the details of that later. Subsection B contains an authentication requirement or refers, relates to a specific authentication requirement for state court records and refers to section 287.6A of the 8 CFR. Subsection C talks about use of properly certified electronic records from state criminal records and the repository of those. And subsection D allows proof based on any other evidence that reasonably indicates the existence of a criminal conviction. I'd like to go back into the details of that in a minute. I recognize that D is a catch-all, and I'll come to that, but I think I can address that simultaneously with other catch-all provisions in this regulatory scheme. In A, there are six different categories of the records of conviction. And I won't go through those at this point, but they're set out on page 13 of my brief. All of these six categories, with one exception, and it's an important one, are all records that come from a court. For instance, in subsection A1, we talk about a record of a judgment or a conviction. A4, minutes of a court proceeding, things like this. Now the important exception here, and this is one that may be critical for this case, and it's one upon which the government bases their position, is subject in A5 talks about you can prove this conviction if you have an abstract of a record of conviction prepared by the court in which the conviction was entered, and this is a United Kingdom situation here, or by a state official for state criminal records division or repository that indicates certain important basic elements of the conviction. And it's our contention that this is A, not a state, and B, it doesn't require the basic requirements that are specified in subsection A5. Which would you say would be missing? I looked at the national identification sections abstract, and I thought that there was each of those categories answered, but could you point me to one of the... Well, I think we have inconsistent records in this situation. There's actually two separate points. If I can just refresh my memory from the regulations here, Your Honor. I guess my feeling is that with inconsistent records, because we have two different situations that deal with this, and it's some question because we have inconsistent statements here, Your Honor. Well, if they're inconsistent, that goes to the weight, doesn't it? That's for the finder of fact to decide whether or not they're credible or reliable. But again, if you could point specifically, which of the elements listed in A5 are missing from those records? I guess perhaps I would say that the exhibit that's on page 20 of the excerpt of records is probably complete as to A5, reserving the issue of whether this is a state. There is another record that is, this escapes me right now, another record that's much more abbreviated in general that I think is missing that. So I guess my point is, and the court's well I'm going to the issue of state here. Now the government states, there's that word again, the government's position is that the word state includes foreign states. So therefore, the authentication requirements for the UK are precisely the same as they would be for a state of the United States. And I've addressed that in my reply brief. Essentially, the word state, the reason why they get these records in the repository is part of a political understanding whereby the government would fund these repositories and they would give the records free to the INS. Is there a different provision in the INS regulations that covers foreign records? Yes, there is, Your Honor. And where would we find that? Well, if you go here to, that crops up in the authentication provisions, Your Honor, and that is in section 287.6 of the regulations. And that contains several different authentication requirements. So not only do you have to actually have the records, but you have to have authentication. And different authentication requirements are imposed for different types of records. But isn't that what the FBI liaison to the embassy in London was attempting to do with the documentation that he submitted along with, I believe it was, Investigator Inspector Brown's transmittals from the National Identification Section in the UK? I agree that's what they were attempting to do, Your Honor. I don't believe they necessarily accomplished that. I mean, that's how you go about doing it. That's how you go about doing it. You go through the local United States Embassy and you usually get a nice blue ribbon and a big gold seal. Yeah, that's actually my exact recollection of how those things look. They get you something called, and every Secretary of State has an office that issues what we call apostills, which is not a religious term here. It's just an attestation that the person is a genuine notary or whatever. And those are commonly used. And the apostilling convention has a lot of signatories. The UK is one and our country is one. And every state issues those. And that's what they needed in this case. And they don't have it, Your Honor. Now, I'm going back to the issue of whether they can slide without an apostill. Because they don't have an apostill here. So what they're trying to do here is authenticate the documents using the state law requirements. So if we go and we look at the actual regulations here, and I know that these regulations can be kind of dreary, but if you go and you look at the actual regulations here, they have four different kinds. And they have domestic authentication requirement in 287.6K. They have requirement in B for signatory for authentication of documents from countries not signatories to the convention. It doesn't apply here. Then they have, I believe it's subject to C, deals with the apostilla convention, which we're dealing with here. Now, the only one that throws the light on this is D. They have a special rule for Canada. Now, Canada gets the same rule that the states do, basically. If you read through the rules, they get the same rule. Now, why would they have a special rule for Canada if in the prior section, 341, they meant to include just all states? So what the government is asking is that the apostilla convention be essentially read out of the regulations. And I don't think that was the intent of the regulations. It's clearly shown here. Now, going back to the catch-all provision, and that is covered in detail in my brief. But basically, the question is, do they have the sufficient proof under the catch-all provision here? And that, I submit, is covered by the case of Perlmutter, which is, I don't have the citation memorized, but essentially that was a similar situation where you actually had fingerprints, you had these foreign convictions, but it was unclear who exactly had issued the certificate of conviction. And in that situation, they held the evidence was not properly authenticated. Now, the government does not, I'm going to finish here and reserve a little bit of my time, the government doesn't even cite Perlmutter in their brief. They don't, not only do they not try to distinguish, they don't even cite it. And so for all the reasons that Perlmutter outlines as the reasons why the general catch-all provision should not pick up this and authenticate this record, all the reasons why in this case the document should not be deemed authenticated. Mr. Purcell, before you sit down, could you tell me what the immigration status is of your client? I thought I read in the record that there was a revocation of his conditional status as a result of a finding that he'd entered into a sham marriage. And if that happened or if that's the case, wouldn't he be deportable on that ground as well? Well, the immigration situation is really quite complex. My understanding is that that was not, that that subsequently was reserved by the judge and he didn't reach that issue because of this particular situation here. Well, he cites it in his decision as an alternative ground. So has the conditional status been terminated? I believe it has been, but there's a question as to whether that was lawful or not. If I could just reserve the time. Well, the Board of Appeals stated that that would be grounds for his deportation. Well, Your Honor, I think that what the, if you go back to the immigration judge's decision in this circumstance, he did, he acknowledged that there had been a mistake. I think he was actually reading from a, the fellow said that the child was born on a certain time and he was reading from the birth certificate of the wrong child and he said, well, I'm not going to, you know, address that issue here because of all this problem here with this foreign conviction issue. And that's my understanding was that those issues would be something that we could address later if we were able to prevail here on a remand. Well, that wasn't the Board of Appeals view of it. Pardon me, Your Honor. I don't recollect specifically what you're addressing in the Board of Appeals decision. This may or may not be the same thing that Judge Riedley is asking about. And we're running you over time, but as long as you have something to say, don't worry about it. Sure, Your Honor. I always have something to say. I'm on page, it's four of the record and the date stamp is unclear, but it's I think 54 of That's four, Your Honor. So it's four, I guess it's four of the, I'm reading from the BIA. Yes, I see that, Your Honor. The third page of the BIA decision. It says deportability under section 241A1DI. A1DI, yes, Your Honor. It's the bottom half of the page. And at the end of that single paragraph under that heading, we find the respondent is deportable due to the termination of his conditional resident status under section 241A1DI of the Act. Now, did you appeal that holding by the BIA? Your Honor, we're not challenging that. What we're talking about here is I believe he's entitled to relief in the form of adjustment or cancellation of removal if he's able to address this issue here. But as I read this, and there may be something I'm missing, the BIA says he's deportable in any event on this ground. Right. However, we come out on the conviction question. Well, the finding that he's deportable is not necessarily finding that he is deported because he still has the opportunity to apply for relief, and it's this foreign conviction situation that is preventing him from applying for relief. Oh, I see. This is sort of the hardship relief? Yes, Your Honor. This is sort of the nature of an affirmative defense if I can draw an analogy to another area of the law, and that's why we're here. I see. So you're not appealing that he's deportable? No, Your Honor. And so what you're trying to get rid of is deportable and he cannot apply for a hardship exemption? Correct, Your Honor. I get it. I'm sorry, Your Honor, there's a reason I didn't mean to avoid that. If I can just have a few minutes, he's going to go. Well, let's hear from the government and then we'll hear from you. Okay, thank you. Good morning, Your Honors. May it please the Court, I am Anthony DeCastro and represent the Attorney General in this case. The Department of Homeland Security established by clear, convincing evidence that Petitioner is inadmissible by virtue of his of marijuana. The INS, or INS at that time, DHS now, submitted several documents to the Immigration Court which would establish that Petitioner was convicted of the illegal importation of marijuana in Great Britain. Instead of addressing each of the provisions of a foreign conviction, I'll just go to the provision D, which was previously referred to as catch-all, and then go through the item. I'd rather start earlier. Fine, Your Honor. In Section 5, and then there's, it comes up actually in C as well, where it talks about the state's repository of criminal justice records. Are you contending that what we've got from Scotland Yard is something that qualifies under that section? Yes, Your Honor. Under Section A, under Section C, I believe, and also under Section D of that particular regulation. And as I read it, it says the state's repository of criminal justice records, correct? And you're arguing that it qualifies under that? Yes, Your Honor. Is the word the an important word? That is to say, does it matter whether there are multiple depositories, or does this regulation require that it come from whatever the repository is? I would say that in this particular case, it would come under whatever has been cited as the repository of the particular conviction. So it has to be the repository. I would say that the would have referred to whatever state, whatever entity has the repository of records. The reason I'm saying that, well, there are several things going on here. If you would look to page 13 of your brief, I'd appreciate it. I'm about five lines up. You're quoting from the letter from the attache. Yes, Your Honor. And you say the National Identification Service is the repository, that's the quotation. You've replaced the word A, which appears in that letter, with the word D in brackets. Why did you do that? If I did, that was just inadvertent, Your Honor. I'd have to look at the- It's inadvertent that you replace a letter and then you put in something else in brackets? Well, before I answer that, Your Honor, let me check and see what the- It'll be page 21 of the excerpts. That's Mr. Fairbrush's two-page statement. Yes. I see that the letter from the legal attache from the FBI says, uses the word, is a repository of the criminal records and histories of the individuals. Yes. I also- I also see the letter from the- I'd like to stay with this letter, please. Okay. Yes, Your Honor. I'm asking- I do see that in the FBI letter. Yeah. It distresses me that a word that is potentially significant, that is to say whether he says a repository or whether he says the repository, he writes A, you replace it and put in a bracket, the. Because this has some potential legal significance and you've specifically not quoted it but given me a different word. Well, Your Honor, if the word the is important to the thing- And it may well be. It may well be depending on the- Remember, there were many letters that were exchanged between both the agency and the foreign officials in foreign countries. Some say the, some say A. I put that- I think- I guess I'll make myself as clear as I possibly can. This is not necessarily going to the merits of the case. This is going to the integrity of the judicial process. You owe us quoting accurately on questions that have any possible relevance and this is an inaccurate quotation. Well, Your Honor, that may be why I put it in the brackets to at least- Does it signal to me that I've got to go back and make sure that you didn't trick me by putting in the wrong word? Your Honor, I'm not, and I certainly didn't mean anything by it, but what I'm saying is whether the word the or the word are is relevant. I think the more relevant word is whether it's a repository of the State documents, Your Honor. I was content to say this in a gentle sort of a way, but you seem to be resisting even understanding what I'm telling you. This is not proper practice to misquote something to put it in a bracket when it is a potential change of the legal meaning. I say nothing further on the point, but I hope you hear it. I do hear it, Your Honor, and I understand it. And I expect to see you back here at some other time in some other case with no misquotations. Yes, Your Honor. Okay, thank you. Addressing the abstract of the conviction under A, it does meet all the five requirements within the regulation. The date of conviction is there. The section of the law violated is there. The disposition of the case is there. The sentence is there. So it meets the four requirements within that provision. It's also been certified as true by the Federal Code. The National Identification Service, New South and the Yard, which has been identified as the repository of the records and histories for the individual. Now, no longer after the misquotation, how do we know that it's the repository? We know from the weight like cachet only that it's a repository. How do we know that it's the repository? Well, Your Honor, there's several other letters which – Two, two more. Yes, Your Honor. And they both say A. Yes, Your Honor, there is. The September 9th letter, 1998, from the Assistant District Counsel, which says that UK National Police Computer, which serves as the UK's official repository of criminal justice records and their – Do we have any statement from the UK that it is the repository? Your Honor, we have a statement from the officer in charge of the INS London office. No, I asked a different question. I know. Yes, Your Honor. Do we have a statement from the UK? Yes, Mr. Brown's certification, nor the letter from Mr. Brown, says that – I'm sorry, from the legal attaché, says it is a repository of the criminal records. Let's use the word the. But this one from – I'm looking at Excerpt of Record 673, and that is from R. Gottlieb, the officer in charge at INS London, and he refers to it as the UK's official repository. Yes, he does, Your Honor. He does. Yes, no, we've got different uses from the people in London, and I'm unsure as to whether I should attach particular importance to a statement from the legal attaché, who may be legally trained, or the officer in charge from the INS, who may or may not be. And I would like, if I could get it, a statement from the UK that it is the repository, but I gather we don't have it here. Your Honor, I did not see that from the UK. All I have is the two letters from both the INS officer here and the INS officer in London. The INS officer here probably doesn't have any specialized knowledge. The INS officer in London may well. Yes, Your Honor, also, well, I take that back, Your Honor. Again, it doesn't say specifically D.A.R. as the issue you pointed out before, but there is a memorandum from the Deputy Legal Attaché, which also talks about the attached UK National Police Computer records regarding. So it doesn't specifically say that it is the repository as far as a repository. But if that word is significant in it, then, yes, it would make a difference, Your Honor. But given the different uses of A and D.A.R., and there's absence of evidence to the contrary that there is any other national repository records other than New Scotland Yard and the National Identification Service, and the service would be that word, A or D, is immaterial. What is material is the particular certification that has come from the repository of records, Your Honor. Mr. DeCastro, could you address Mr. Purcell's argument that the government here failed to comply with the conventions as to APOS deals, which I thought was the manner in which these sorts of documents from foreign countries should be authenticated? Yes, Your Honor. The authentication process that was used in this particular case does not specifically follow the 287.6 regulatory requirements. It does follow, as this Court has stated in Espinoza, that the authentication has been through some recognized procedure. And that is also consistent with the Board case law in matter of B.A.T.A. in the identification of foreign documents in that particular case. Now, it doesn't have the seal and the ribbon, and that is not contested here, but there has been a recognized procedure in which this went through authentication before the Court, which should be sufficient under this Court's law as well as the Board's law that it was properly certified. But if the procedure is the procedure set forth in the convention, and that wasn't followed, how does merely submitting the evidence to the immigration court substitute for the procedure that the convention provides? Well, Your Honor, I can't speculate as to why it wasn't actually certified within the convention. I can only surmise that because the actual record of conviction doesn't exist anymore, because it's been destroyed after 10 years, they may have had to have some other procedure. I don't know whether or not that qualifies or not. But as I understand the apostille process, I mean, it may be more formalistic than it is substantive, but essentially what would be required would be for the legal, I assume the legal attache could do it, maybe it requires a State Department employee, but somebody at the U.S. Embassy in London would have to certify that M.J. Brown is a custodian of the records at the National Identification Section, and these are the documents that he has provided to the U.S. Embassy, and then the apostille is affixed to whatever Mr. Brown delivered to the Embassy, and that's what gets transmitted to the United States, and that didn't happen here. No, that did not happen in this case, Your Honor. You're right. It did not happen. It happened through this, the procedure that is in the record. I cannot explain why it didn't happen in that particular manner. I can only see through the correspondence that they were continuing to try and certify these records, and in one point of the record they asked for the actual conviction, and that's when they got the letter back saying, we don't have it, it's been destroyed. This is the abstract of the conviction. I'm not sure that answers your question, but it was not. Well, I guess if I find that the convention wasn't complied with, then the only way you can get these records in would be under the catch-all provision. Yes, and some recognize, because as this Court said, and I see my time's up, but as this Court said in Oran v. INS, as long as there's some authentication process, then the concerns of due process, which we are looking at today, concerning the authenticity of the document will be met, as long as there's some recognized procedure. And that's what this Court looked at in Espinoza after the decision in Oran and from that particular date. I'm not sure I fully followed the argument. Did you just tell me that you can violate the regulations, but it's nonetheless okay so long as it complies? No, Your Honor. What I was saying is that initially when this Court looked at the issue of authenticated documents, they find there had to be some procedure in place, anything. And in fact, it said 287.6 was not the only way documents could be authenticated. It's not exclusive. It could be through some other proceeding. And later on, and that was the main concern in Oran, in that they weren't authenticated, so there was some due process issue, concern there. Later on, in Espinoza, they looked at it again and said, well, as long as there's some recognized procedure. And the recognized procedure is in the regulation, but it's also in the board case law in matter of beta, which they cite and follow and show that it was certified by a foreign officer having custody of the document and a foreign service officer stationed in a foreign country. And that's essentially the Court's question. Thank you very much. No, that's okay. As long as we're interested in getting answers, we're interested in hearing. On the issue of the foreign authentication, what happens is that it's actually the foreign official, a government official, the foreign body that certifies the apostille and gives out the apostille. So what would happen would be the equivalent of the Secretary of State, whoever that might be in the United Kingdom, or whatever signatory there is, would actually issue the apostille. So it would not actually go through the embassy at all, our embassy at all. It would go through, it would become straight from the foreign Secretary of State. So it would be the English official who would be attesting to the fact that Brown is the custodian of the record. Right, and that's what I'm saying is missing here. We have no indication of Mr. Brown's authority of any kind, and that's the exact sort of thing that the apostille convention is intended to address. I don't really have any. I just, on the catch-all provision, I think Perlmutter defines what that means, and they haven't distinguished that, and I think Perlmutter is directly on point. So if they can't qualify under the catch-all, they haven't got the apostille, I don't think they can make out the case. Now, Judge Reedley talked about the issue of what's his status. What happens is because of his convictions, he has cascading ineligibility for forms of relief, and that is discussed on the last page, last two pages of the BIA decision, which, these are kind of faded, page 55 and 56 of the Adversary Book of Records, and that's what we're talking about here. It's this existence of this conviction that prevents us from applying for waivers, and that's why we're here in this court here, Your Honor. And if he is applying for a waiver on, I kind of filled in the blank, but I'd like to hear it directly from you because I might have gotten it imprecisely. If he turns out to be eligible for a waiver, on what ground would he apply for a waiver? Well, there's several grounds, Your Honor. The most important one would be Section 212C, former Section 212C. That was addressed by the, we didn't address this directly in our brief, but that was held to be not retroactive in effect by the case of St. Cyr versus INS, which was decided in June. And he would come within St. Cyr? I think he would, Your Honor. And 212C, remind me, I know they changed the definition of hardship. What's the old definition under 212C? Your Honor, I don't know the answer to that. I've always thought it was extreme hardship. What's the effect of the I.G. finding that he's not entitled to a waiver? He doesn't get a waiver. He doesn't get to stay here with his family, and he ends up the full force of it. He's married in good faith. He's not entitled to a waiver. He's deportable. Being found deportable, Your Honor, is not necessarily a fine that one is deported. It's very common in immigration court for people to be found deportable, or the word now is removable, and still be able, because of a marriage to a U.S. citizen or asylum or what have you. Well, if the I.G. didn't decide that, why did he write page after page after page on the evidence of the suspension of his conditional permit? Well, I just focused in on the BIA decision for the moment, Your Honor. I don't know why he felt necessary to go into that. The basic problem is the BIA says, we don't need to get into details of whether the I.G. would grant this or not. We just find that he's not deportable. And I think this court's review looks, at least where there has been a decision by the BIA, at the BIA's decision. It doesn't go under to the immigration judge's ruling. At least that's my understanding, Your Honor. What do you do? Go back now and appeal again to the Board of Appeals on the alternate finding and decision of the I.G.? I think that would be correct, Your Honor. The remand would go back to the BIA with instructions to allow an application for... Even though the BIA said that's an alternate grant? I don't think that's what the BIA ruled, Your Honor. I think that the immigration judge might have done that. But the BIA was getting to the issue where the immigration judge, you'll recall that he'd been looking at the wrong birth certificate, and there was an issue about whether it was a good faith marriage. And the BIA, and this is in their decision, says, we don't need to address this issue about whether the immigration judge abused his discretion, because he acknowledged, I think, in his decision he'd made a mistake, because we're finding that because of these foreign convictions, he's not eligible for the relief anyway. So that issue, I think, has not been actually settled by the agency in a final way. So you're saying it's a bit of a catch-22 situation. Until he can get the drug conviction issue resolved, he's not going to be able to satisfy the requirements for a waiver of the deportation. Yes, Your Honor. Okay. I can't answer the value check question, though, if you want. I think I've got it. Okay. Thank you very much. The case of Ruth Rivers and Ashcroft is now submitted for decision. The last case on the argument calendar is Balista v. Ashcroft. Thank you.
judges: Reavley , W. Fletcher, Tallman